AO 91 (Rev. 11/11) Criminal Complaint 

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

United States of America
v.
KHAYREE GAY

*Defendant(s)*

Case No. 15-438-M

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 4, 2015 in the county of Philadelphia in the Eastern District of Pennsylvania, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC 1951 | Attempt to commit robbery which Interferes with Interstate commerce. |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

S/A Sarah O'Reilly
*Complainant's signature*

ATF SA Sarah O'Reilly
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/10/2015

*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Marilyn Heffley, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Sarah O'Reilly, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter referred to as "ATF"), being duly sworn, state as follows:

1. I am employed as a Special Agent with ATF and have been so employed since 2008. I am currently assigned to the ATF Violent Crime Task Force. As a Special Agent for ATF, I have investigated violations of federal law being committed by violent offenders and criminal organizations, including robberies, drug offenses, kidnapping, and firearms offenses. The information contained in this affidavit is based on my personal knowledge, and information provided to me by other law enforcement personnel and recorded conversations. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the issuance of the arrest and search warrant requested herein.

2. This affidavit is submitted in support of a criminal complaint and arrest warrant for Khayree GAY for violations of Title 18, United States Code, Sections 1951 (attempted Hobbs Act robbery) and 1201 (kidnapping); and, in support of an application for a search warrant to search 1416 Clearview Street, Building K, Apartment 205, Philadelphia, Pennsylvania (1416 Clearview), to seize evidence and instrumentalities of violations of Title 18, United States Code, Sections 1951 (attempted Hobbs Act Robbery) and 1201 (kidnapping).

3. 1416 Clearview is a residence used by Khayree GAY (GAY), and is the residence of Keolocha Oliver (Oliver) and her four children, believed to be GAY's children, who have the last name "GAY."

**PROBABLE CAUSE**

4. On April 4, 2015, the victim, "I.V." (IV) left her employer, National Watch and Diamond Exchange (National Watch), a jewelry store engaged in and affecting interstate commerce, located at 101 South 8th Street, in Philadelphia, Pennsylvania, and walked to her car parked in a public garage at 733 Chestnut Street, when 3 black males jumped out of a burgundy van parked in the parking lot. The men assaulted her with a Taser gun when she tried to run and they covered her head with a hood. The men abducted her and forcibly placed her in the van. While in the van, IV's arms and legs were bound with plastic zip ties and she was beaten by all three men and tased with electric currents repeatedly. IV gave them the personal identification number for her ATM card so that they could withdraw money from her account, and she gave them a ring she was wearing, so that they would not kill her. The kidnappers responded that they were not interested in those items and demanded the code to the safe at the National Watch and the alarm code to get into the store. Her abductors told her that they knew she had the information because she was the "owner."[1] The three men drove her to a gas station where they used her First Trust Bank ATM card to purchase approximately $40 in gas for the van. IV was beaten severely throughout her abduction. IV was driven to Mount Lawn cemetery in Darby, Pennsylvania, and left there with her hands and legs restrained. The men then returned a short time later and abducted IV a second time. The men restrained IV's legs during the second abduction with metal shackles, and her hands with metal handcuffs. The men again demanded that she tell them the code to the safe of National Watch and the alarm code. When IV did not provide the information, she was left again in the cemetery bound in the metal restraints. IV was

---

1 Although IV has been employed by National Watch for over 15 years, IV is not the owner of the store, and was never given the code to the safe.

able to walk to the closest street and signal a passing motorist for help. During IV's kidnapping the three men stole her purse and all if its contents, including approximately $200, prescription medications, her cell phone, her keys, and her ATM card. Hours after IV was left in the cemetery, her ATM card was used at an ATM machine on Chester Avenue in Philadelphia to withdraw approximately $200 from her First Trust bank account three times for a total of approximately $600. The ATM machine was not equipped with a video camera. I have confirmed that First Trust bank is a bank in which the deposits are insured by the Federal Deposit Insurance Corporation.

5. On or about April 8, 2015, Philadelphia Police received information that a man with the burgundy van shown in media reports of the April 4 kidnapping frequented Oliver's apartment on Clearview Street. This information has been corroborated in this investigation.[2]

6. Video surveillance recordings were obtained from the Philadelphia Housing Authority for 1416 Clearview. On April 3, 2015, GAY was recorded exiting and returning to that address in a burgundy Ford Econoline van with distinctive white markings on both sides of the van. On April 4, 2015, a man appearing similar to GAY exited that address and got into the driver's seat of the same burgundy van.

7. On April 9, ATF conducted surveillance of 1416 Clearview and observed a white Buick Park Avenue registered to GAY parked in close proximity to that address.

6. According to information I obtained, Khayree GAY is a 31 year old unemployed male who is listed on his driver's license as being 6'2".

2 In September 2012, Philadelphia police officers responded to a call at 1416 Clearview for a domestic disturbance between GAY and Oliver in which Oliver alleged, among other things, that she was in her apartment at 1416 Clearview, K #205, with GAY when an altercation ensued. On that date, Oliver was shown a photo of GAY and she identified him as her son's father.

7. After receiving treatment for her injuries at Penn Presbyterian Hospital, IV was interviewed and described the driver of the burgundy van as being a male with a dark black complexion, approximately 6'3" tall with a muscular build. According the victim, the driver was wearing a hooded top, ski mask covering the lower portion of his face, and sunglasses.

8. As part of this investigation, I have reviewed approximately five video recordings of locations relevant to this case. On April 3, 2015, the day before the robbery/kidnapping, the burgundy van with the distinctive white markings is shown leaving the parking garage at 733 Chestnut at approximately 5:00 p.m. Approximately three hours later, the van is seen parking near 1416 Clearview and a male is seen exiting the driver's door of the van. No other individuals exited the van. When the man approaches the main entrance door of the apartment complex, his face is clearly shown. I have reviewed photographs of GAY from his driver's license and the photo identified by Oliver in September 2012, and can conclude based on the comparison that the man entering the apartments on Clearview Street on April 3 is GAY. It is reasonable to believe based on the evidence obtained to date, that the GAY was conducting surveillance of National Watch and IV the day before the attempted robbery and kidnapping. Although I observed GAY entering the door to the complex, and not Apartment 205, I know from this investigation that GAY's family members reside in Apartment 205 of Building K, at 1416 Clearview, and GAY stays there. On April 4, at 12:23 p.m., a male similar in appearance to GAY[3] is seen leaving a side door of 1416 Clearview wearing a light colored shirt and dark pants. Approximately one minute later, the male gets into the driver's seat of the burgundy van and leaves the area. At approximately 1:07 the burgundy van is seen entering the parking garage at 733 Chestnut. Video

3 The video does not show the man's face clearly, however the man's height and build is similar to how GAY appeared in the video on April 3, 2015.

recordings from inside and outside National Watch show a black male in dark clothing walking down the street toward National Watch, walking past it, and doubling back to go into National Watch. Once inside the store, the male's face is clearly visible and I was able to recognize him as GAY from the April 3rd footage at 1416 Clearview and the independent photos I reviewed. GAY moves throughout National Watch surveying the store and the contents of its display counters. GAY engages IV in a face-to-face conversation, during which he takes a business card from the counter and appears to write on it. GAY exits the store and walks across the street toward the parking garage at 733 Chestnut, the location where IV was abducted and put into the burgundy van approximately thirty minutes later.

9. Approximately 40 minutes after IV was kidnapped and forced into the burgundy van by 3 black masked men, the burgundy van pulled up to a gas pump at the WaWa gas station at 8220 Bartram Avenue in Philadelphia. Video obtained from the gas station shows the passenger of the van exit the van from the left side and use the gas pump. The driver then exits the van to assist the passenger with the gas pump and is seen wearing a light colored shirt and dark pants. This clothing is similar to the clothing worn by the man leaving 1416 Clearview in the burgundy van hours before IV's abduction.

10. Since the April 4th abduction, we have not observed the burgundy van at 1416 Clearview. Soon after the kidnapping, Philadelphia Police released photos of the burgundy van and described it as the van possibly connected to the kidnapping of IV. I believe that GAY disposed of the van to evade law enforcement and destroy evidence.

11. I submit that GAY has attempted to conceal the 1416 Clearview address from law enforcement. In all other police paperwork dating back to 2004, I know that GAY provides the following addresses to police: 1321 South 31st Street and 6151 North Fairhill Street. GAY also

lists 6151 North Fairhill Street on his Pennsylvania driver's license. From my training and experience, I know that individuals like GAY, who are involved in criminal behavior such as this, make every attempt to conceal locations where they reside from law enforcement to evade the seizure of evidence and to evade capture. However, as stated herein, I know from my investigation that GAY left 1416 Clearview Street, Building K, Apartment 205, hours before the commission of the attempted robbery and kidnapping. Furthermore, I know from my experience that GAY would likely return to 1416 Clearview Street, Building K, Apartment 205 following the crime, because GAY knows it is not an address of record and is therefore a safer location for GAY to store and/or maintain items used in the commission of the robbery and kidnapping, clothing worn during the crime, and fruits of the crime.

12. On April 9, 2015, I received information that a white Buick Park Avenue, PA Registration JGD6367, seen recently parked near 1416 Clearview is registered to GAY. The address listed on that vehicle's registration is 6151 North Fairhill Street, Philadelphia, the same address which appears on GAY's driver's license.

13. I know from training and experience that individuals such as GAY, who engage in the planning and commission of robberies, will keep evidence of their criminal activity in places they live, such as 1416 Clearview. The items that they maintain include clothing, cash proceeds, firearms, cellular phones, masks, gloves, boots, items to conceal their appearance, restraints such as handcuffs and zip-ties, notes and/or maps related to robbery locations, written notes describing their plans, and surveillance notes. Also included would be items used to restrain and/or incapacitate people, including but not limited to Tasers, and other items that are used to facilitate the commission of these crimes. In addition, individuals who commit these crimes often maintain fruits of the crime in locations they reside, such as credit cards, ATM cards, stolen personal

property of their victims, including cellular phones, car keys, etc.

14. Based on the foregoing, there is probable cause to believe that the property identified in Attachment A contains items including those set forth in Attachment B, which are evidence of and/or fruits of the commission of the crimes discussed herein, including violations of Title 18, United States Code, Section 1951 (attempted Hobbs Act robbery), and Title 18, United States Code, Section 1201 (kidnapping).

**CONCLUSION**

15. Based on the foregoing, I submit there is probable cause to believe that GAY committed the crimes outlined in this affidavit, namely attempted Hobbs Act robbery and kidnapping. Additionally, I submit that within 1416 Clearview, there exists evidence and instrumentalities of violations of Title 18, United States Code, Sections 1951 (attempted Hobbs Act robbery) and 1201(kidnapping). Accordingly, I respectfully request an arrest warrant be issued for GAY and a search warrant be issued authorizing the search of the location described in Attachment A (Locations to be Searched) for the seizure of the items listed in Attachment B (Items to be Seized).

S/A Sarah O'Reilly
Sarah O'Reilly
Special Agent
ATF

Sworn to and subscribed before me this

10th day of April, 2015.

HONORABLE MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE